In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00033-CR


______________________________




DETRIC SHEFFIELD, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 33597-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Detric Sheffield, appellant, has filed with this Court a motion to dismiss his appeal. The
motion is signed by counsel. Attached to the motion is an affidavit signed by Sheffield which states
he has read the motion and that it is true and correct. As authorized by Rule 42.2 of the Texas Rules
of Appellate Procedure, we grant the motion. See Tex. R. App. P. 42.2.

 Accordingly, we dismiss the appeal.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: September 25, 2007

Date Decided: September 26, 2007


Do Not Publish





*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

O P I N I O N



 In a prior appeal, we reversed the trial court's judgment revoking Freddy Hatten's community
supervision and remanded the cause, because we found that the trial court failed to adequately inform
Hatten on the record of his right to counsel and the dangers of self-representation. The Texas Court
of Criminal Appeals reversed our judgment because there is no requirement that the trial court
admonish a defendant on the dangers and disadvantages of self-representation when the defendant
does not contest his guilt in a misdemeanor case. Hatten pleaded true to the motion to revoke in this
proceeding. See Johnson v. State, 614 S.W.2d 116 (Tex. Crim. App. [Panel Op.] 1981) (op. on
reh'g). In its opinion reversing our judgment, the Court of Criminal Appeals said, "What remains
to be decided, . . . is whether the waiver of right to counsel was knowing, intelligent and voluntary. 
That is a separate issue apart from the entitlement to admonishments under Faretta." Hatten v. State,
71 S.W.3d 332, 334-35 (Tex. Crim. App. 2002).

 Before Hatten pleaded true to the motion to revoke, he signed a written form waiving certain
rights, including his right to an attorney. (1)



 In addition to receiving and approving Hatten's waiver form, the trial court inquired into
Hatten's knowing and intelligent waiver of his rights as well as his mental condition and his
understanding of the proceedings. (2)


 In the past, there have been some differences of opinion among the courts of appeals as to
when and under what circumstances it is necessary for the trial court to advise a defendant as to his
right to counsel and admonish him on the record as to the dangers and disadvantages of self-representation. At least part of this uncertainty has now been removed. Since the decision in
Johnson v. State, it is clear that, in misdemeanor cases where the defendant's guilt is not contested,
the trial court is not required to admonish the defendant as to the dangers and disadvantages of self-representation, but must only see that the defendant voluntarily and intelligently waived his right to
counsel. Johnson v. State, 614 S.W.2d 116; Garcia v. State, 909 S.W.2d 563 (Tex. App.-Corpus
Christi 1995, pet. ref'd); Barras v. State, 902 S.W.2d 178 (Tex. App.-El Paso 1995, pet. ref'd);
Blocker v. State, 889 S.W.2d 506 (Tex. App.-Houston [14th Dist.] 1994, no pet.); State v. Finstad,
866 S.W.2d 815 (Tex. App-Waco 1993, pet. ref'd); Cooper v. State, 854 S.W.2d 303 (Tex.
App.-Austin 1993, no pet.).

 Moreover, the teaching of Johnson and the above-cited courts of appeals cases, all of which
are cited with approval by the Texas Court of Criminal Appeals in Hatten v. State, 71 S.W.3d 332,
is that, if the defendant in a misdemeanor case where guilt is not contested signs a written waiver of
counsel in court and there is no contradicting evidence or any evidence that the defendant was
coerced or intimidated, the record is sufficient to support a finding that the defendant's waiver of
counsel was valid. That is what occurred in this case. Hatten signed an extensive and thorough
written waiver approved by the trial court. There was some testimony about his knowing waiver of
his rights, and in none of the evidence is there any hint that tends to contradict his written waiver. 
The trial court found that Hatten freely and voluntarily waived his right to counsel and to a jury trial
and other rights. Paraphrasing the words of the Houston Court of Appeals in Blocker v. State, 889
S.W.2d at 508, we note that, if Hatten had second thoughts about proceeding without a lawyer, he
was free to bring those concerns to the trial court's attention before the entry of his plea of true.

 Because the record here supports the trial court's finding that Hatten voluntarily and
intelligently waived his right to counsel, we affirm the trial court's judgment.





 William J. Cornelius

 Justice*


*Chief Justice, Retired, Sitting by Assignment


Date Submitted: August 6, 2002

Date Decided: September 20, 2002


Publish
1. The form reads as follows:


 Now comes the Defendant herein, in person and WITHOUT an attorney, and
states that he understands the following:

 

 1. The Defendant has the right to remain silent and not make any
statement at all and that any statement the Defendant makes may be
used against him at his trial;



 2. Any statement the Defendant makes may be used as evidence against
him in Court;


 3. The Defendant has the right to have a lawyer present to advise him
prior to and during any questioning;


 4. If the Defendant is unable to employ a lawyer, he has the right to have
a lawyer appointed to advise him prior to and during any questioning;
and


 5. The Defendant has the right to have an attorney represent him in
Court in connection with this case and if the Defendant is unable to
employ a lawyer, he has the right to have a lawyer appointed to advise
him in Court in connection with this case;


 6. The Defendant after being advised of these rights freely, intelligently
and voluntarily (DOES) give up his right to have an attorney to
represent him;


 7. The Defendant understands the nature of the allegations against him;


 8. The Defendant understands the range of penalty for the offense
charged against him;


 9. The Defendant waives the reading of the State's Application to
Proceed or Application to Revoke;


 10. The Defendant represents to the Court that he desires to make
immediate disposition of the case by here and now entering his plea
of (TRUE) herein;


 11. The Defendant hereby waives his right to confront the witnesses in
this case and waives his right to present witnesses in his behalf;


 12. The Defendant hereby demands this case be submitted to the Court
on all issues of law and fact.

2. The colloquy between the court and Hatten was as follows:


 THE COURT: This is a hearing on the Application to Revoke Mr. Hatten's
probation. I'm showing you a document called Explanation of Revocation Rights
Application to Proceed. Did you sign this document?


 THE DEFENDANT: Yes, sir.


 THE COURT: At the time you signed this document, did you understand that
by signing this document you were giving up your rights in this matter -- to a hearing
in this matter and saying that the allegations brought against you to revoke your
probation are, in fact, true. Did you understand that?


 THE DEFENDANT: Yes.


 THE COURT: All right. Did you understand that by signing this document,
it could result in me finding that the allegations brought against you are true and
ordering that your probation be revoked and the original sentence of 365 days in jail
and a $4,000 fine that were imposed first on you on September 16th, 1997 could be
re-imposed on you today. Did you understand that?


 THE DEFENDANT: Yes, sir.


 THE COURT: Okay. Are you thinking clearly?


 THE DEFENDANT: Yes.


 THE COURT: You just signed this a few minutes -- within the last hour;
right?


 THE DEFENDANT: Yes.


 THE COURT: Have you ever been treated for mental illness?


 THE DEFENDANT: Yes.


 THE COURT: When was the last time you were treated for mental illness?


 THE DEFENDANT: I [have] been treated for it and I take medication for it.


 THE COURT: You know what condition -- what your condition is?


 THE DEFENDANT: Schizophrenia.


 THE COURT: Do you know where you are?


 THE DEFENDANT: Yeah.


 THE COURT: Where are you?


 THE DEFENDANT: I'm in jail, I guess; county jail.


 THE COURT: Where are you right now?


 THE DEFENDANT: In court.


 THE COURT: What court, do you know?


 THE DEFENDANT: Yes, sir.


 THE COURT: Do you know who I am?


 THE DEFENDANT: Yes, sir.


 THE COURT: Who am I?


 THE DEFENDANT: Judge Ammerman.


 THE COURT: And these guys, who are they? Do you know what their job is?


 THE DEFENDANT: Yes.


 THE COURT: They are district attorneys? Prosecutors.


 THE DEFENDANT: Yes, sir.


 THE COURT: Sir?


 THE DEFENDANT: Yes, sir.


 THE COURT: And you've got a probation officer in here somewhere?


 THE DEFENDANT: Ms. Epps.


 THE COURT: Do you understand what we are here today for? Ms. Epps is
saying you broke your probation?


 THE DEFENDANT: Yes, sir.


 THE COURT: Okay. You appear to be thinking pretty clearly to me.

 Mr. Hill and Mr. Phillips, did Mr. Hatten appear to be thinking clearly to you
when you discussed this case?


 [PROSECUTOR]: I discussed the paperwork and he gave me no indication
for me to think that he wasn't thinking clearly and understanding what we were
discussing.


 THE COURT: Okay. You appear to be thinking clearly today, Mr. Hatten,
so I approve you giving up your rights in this matter and accept your plea of true.